7148

BERLEY v. WESTERN UNION TEL. CO.

1. MASTER AND SERVANT—NEGLIGENCE—TELEGRAPH COMPANIES.—That a lineman climbed a telegraph pole, worked on it, descended and went up again and while his fellow-servants were stretching a wire on it in the ordinary way, it being his duty to be on the pole to guide and fasten the wire, the pole fell, and was found to be worm-eaten and rotten at the ground, do not show conclusively that the injury was caused by the acts or negligence of plaintiff's fellow-servants and that the defective pole was not the proximate cause of the injury.

2. IBID.—IBID.—IBID.—ISSUES.—That a lineman before climbing a pole looked at it and pushed it raises an issue for the jury whether he negligently breached a rule of the company requiring that poles must not be climbed without being tested, and if weak, assistance must be called to hold them; also, the issues of assumption of risks and contributory negligence.

3. IBID.—IBID.—Request to charge in effect, if the pole fell by reason of other employees pulling a wire, the accident was caused by th¹ negligence of fellow-servants, is faulty in that it denies plaintiff's right to recover if the pole was defective, or if the injury was the result of the combined negligence of fellow-servants and the master.

4. IBID.—CHARGE.—Where there is no issue requiring more particular statement, it is not error to instruct jury it is duty of master to inform servant of hidden dangers in the place or machinery without adding the qualification, if such hidden dangers are known to the master, or could have been known by exercise of ordinary care.

Before GARY, J., Richland, summer term, 1908. Affirmed.

Action by Samuel Berley against Western Union Telegraph Company. From judgment for plaintiff, defendant appeals.

*Messrs. Geo. H. Fearons and Nelson & Nelson,* for appellant, cite: *Master is not liable for negligence of fellow servants:* 18 S. C., 262, 275; 22 S. C., 557; 23 S. C., 529; 39 S. C., 509; 70 S. C., 95; 71 S. C., 53; 72 S. C., 238; 61 S. C., 475; 71 S. C., 56; 58 L. R. A., 508; 51 L. R. A., 513;

160 Mass., 152; 44 N. Y. Supp., 1; 86 Pa., 439; 34 N. E., 185. *Plaintiff is bound by his allegations:* 45 S. C., 278; 55 S. C., 483. *Foreman is fellow servant:* 1 Labatt on M. & S., 1129; 168 U. S., 85; 45 S. E., 220; 44 S. E., 992; 34 So., 612; 22 L. R. A., 631; 68 N. E., 362; 20 R. I., 386; 49 S. E., 182; 71 Pac., 609; 70 Am. St. R., 244; 22 A. & E. R. R. C., 309; 34 So., 399; 175 U. S., 323; 154 U. S., 349; 162 U. S., 346. *Duty of master to warn of hidden dangers:* 55 S. C., 488; 72 S. C., 243; 1 Lab. on M. & S., 525, 527, 528, 529, 533, 534-6.

*Mr. Frank G. Tompkins,* contra, cites: *Any evidence to support plaintiff's claim carries case to jury:* 21 S. C., 101; 55 S. C., 179; 41 S. C., 158; 53 S. C., 361; 42 S. C., 454. *Duty of master to furnish safe place is continuous:* 64 S. C., 214; 18 S. C., 270, 275; 39 S. C., 510; 51 S. C., 96; 54 N. W., 492; 167 N. Y., 211; 45 Am. St. R., 451; 108 N. W., 662; 74 N. E., 912; 34 S. C., 214; 40 S. C., 104; 72 S. C., 259; 77 S. C., 430. *Negligence of plaintiff is for jury:* 72 S. C., 346; 69 N. E., 1042; 130 Fed., 813; 86 S. W., 905; 104 Ia., 721; 26 Barb., 39; 92 Fed., 572; 40 Mich., 420; 111 Pa. St., 343; 1 Labatt on M. & S., 4, 474. *Combined negligence of master and fellow servant renders master liable:* 79 S. C., 502.

April 9, 1909.  The opinion of the Court was delivered by

MR. JUSTICE JONES.  The plaintiff recovered judgment against defendant for $1,000 in this action for damages for personal injuries resulting from the falling of a defective pole which cast him to the ground while employed as a lineman on one of defendant's telegraph lines near Martinsville, Va.

The act of negligence alleged in the complaint is that the defendant failed to provide plaintiff a. safe place to work, "the said pole on which he was required to work being de-

cayed and incapable of sustaining the weight of a man working thereon."

Defendant, in addition to a general denial, pleaded assumption of risk and contributory negligence.

Plaintiff was engaged with a gang of employees of defendant under the direction of M. V. Lemmond, foreman, in stringing an additional wire on defendant's telegraph line between Leakville Station, Va., and Stewart, Va., and at the time of the accident, had gone over a distance of about twenty-eight miles of said line. On the day of the accident and for several days previous thereto, it was plaintiff's duty to climb poles, nail on brackets and fasten the wire thereto, after it had been pulled tight by two men on the ground at the next pole with a block and tackle. On this occasion plaintiff climbed the pole carrying up with him the bracket and wire, nailed on the bracket, laid the wire thereon loosely and descended to the ground while the other employees were waiting for water, and when they were ready to pull the wire tight by means of the block and tackle, he went back up the pole for the purpose of fastening the wire. When he was near the top of the pole, while the wire was being stretched, the pole broke off at or near the ground and he was precipitated therefrom into the railroad cut falling on the crossties, sustaining the injuries complained of.

At the close of plaintiff's testimony, a motion for nonsuit was made on the grounds, (1) that the evidence conclusively showed that the injury was not the proximate result of any negligence of defendant but of the acts of fellow servants or the acts of plaintiff and fellow servants combined; (2) that the injury was within the risks of employment assumed by plaintiff. After verdict, a motion for new trial was made on the grounds (1) that the injuries were due to the acts and negligence of fellow servants; (2) that the injuries were not the result of any act of negligence

alleged in the complaint. The motions were overruled and the first and second exceptions assign error.

We find no error. The testimony is practically undisputed that the pole was worm eaten and rotten at or near the ground and that it broke and fell while plaintiff was on it at work, when subject to the stretching of the wire in the usual and ordinary manner. There was no testimony that the fellow servants stretched the wire in a negligent manner and that such negligence broke the pole which would have stood but for such negligence, but that the pole broke under the ordinary strain involved in the mere stretching of the wire. A natural inference from the testimony is that but for the defect in the pole, the usual stretching of the wire would not have broken it. Hence it cannot be said as matter of law that plaintiff was injured by the acts or negligence of the fellow servants and that the defective pole was not a proximate cause of the injury.

The specific act of negligence alleged—a defective pole, incapable of sustaining the weight of a man working thereon, was sufficient to cover the case made by the testimony, which was a defective pole which broke while plaintiff was working thereon in the line of his employment, while the wire was being stretched in the usual way. It is argued that the pole was shown to be sufficient to sustain the weight of plaintiff while going up and down it and placing the bracket thereon, and that it was not plaintiff's duty to remain on the pole during the process of stretching the wire, but there was testimony that it was the duty of plaintiff to be on the pole to guide the wire while being stretched and to fasten it when sufficiently taut.

Whenever the testimony is such as to raise a *question* or *issue* of assumption of risk or contributory negligence, such issue should be submitted to the jury, and it is the province of the Court to decide such matters, only, when the testimony is susceptible of no other reasonable inference than that plaintiff assumed the risk or negli-

gently contributed to his injury. We think the testimony does not conclusively show either of these defenses. It appears that a rule of defendant required that "poles must not be climbed without being tested, and if they are weak assistance must be summoned to hold them while being worked upon." For this purpose the defendant supplied pike poles and guy ropes. For defendant, it was testified that this rule was read to and was known by plaintiff, but he testified he was not aware of the rule. He had been working at this particular part of the work but a few days. It further appeared that the usual test to ascertain whether the pole was safe was to shake it, and if the pole was deemed unsafe, the climber should call to his assistance any members of the gang who with the pike poles and guy ropes should support the post for the climber. If the pole was found much decayed near the ground, it was the duty of the employees to cut down the pole, cut off the decayed end, reset the pole before the climber ascended it. This had been done in only three instances on the line of twenty-eight miles and plaintiff testified that he had not seen a pole so reset. The plaintiff, however, testified that before climbing the pole, he looked at it to see if it was rotten and pushed it, and could find no fault. This testimony was sufficient at least to raise an issue whether plaintiff had knowingly or negligently breached any rule of the company designed and promulgated for his safety, or had negligently climbed the pole under the circumstances, or had gone into a place of obvious danger, or, with knowledge of the defective condition of the pole, had voluntarily assumed the risk of working upon it.

The third exception assigns error in refusing to charge defendant's twelfth request as follows: "If you find from the testimony that at the time of the accident and alleged injuries, the plaintiff, Samuel Berley, was one of a gang engaged in repairing the line of defendant and in stringing an additional wire along said line, and

the pole he was climbing fell on account of the strain put upon it by reason of the other employees in the same gang with plaintiff pulling a wire attached to said pole while the plaintiff was upon said pole, I charge you that the plaintiff and the other employees in said gang were fellow servants, and plaintiff cannot recover."

The request was properly refused because it was faulty in denying plaintiff a right to recover should the jury take the view that the pole was so defective that it broke while the fellow servants were stretching the wire with due care, or should the jury take the view that the injury was the result of the combined negligence of the master and fellow servants. The law was correctly given to the jury in charging defendant's tenth request as follows:

"If you find from the testimony that at the time of the accident and alleged injuries, the plaintiff, Samuel Berley, was one of a gang engaged in repairing the line of defendant and in stringing an additional wire along said line, and that the pole he was clmbing fell by reason of the strain put upon it by the other members of said gang stretching a wire attached to said pole, and that plaintiff was negligent in remaining upon said pole, while said wire was being stretched, or the other members of said gang were negligent in stretching said wire while plaintiff was upon said pole, in either event the plaintff cannot recover, if such negligence contributed to his injury as a proximate cause thereof."

The fourth exception alleges error in instructing the jury that it is the duty of the master to point out to the servant hidden dangers in the place or machinery, without adding as a qualification, if such hidden dangers are known to the master or could have been known by the exercise of ordinary care. A full and accurate statement of the law governing the duty of the master to warn the servant of hidden dangers would involve the qualification mentioned, as the master is not liable as an insurer but for *negligence* in the performance of a duty to a servant. But

in view of the whole charge we cannot think the jury was misled into believing that it was the absolute duty of the master to warn the servant of hidden dangers, even though the master did not know or could not with reasonable diligence have known of such danger. The charge as a whole impressed it upon the jury that no recovery could be had unless the defendant was negligent in failing to provide a reasonably safe place. The specific charge complained of was only intended to be a general statement of the master's duty and there was no request for a modification in the particular mentioned and really no issue requiring greater particularity of statement, as the complaint is not based upon negligence of the master in failing to warn of hidden dangers.

The fifth and sixth exceptions allege error in modifying defendant's first request to charge, which was as follows:

"The general rule resulting from considerations of justice and policy is that he who engages in the employment of another for the performance of specified duties and services for compensation takes upon himself the natural and ordinary risks and perils incident to the performance of such services, not only so far as they were known to him, but also so far as they could have been known to him by the exercise of ordinary care upon his part; and if you believe from the evidence that whatever injuries the plaintiff sustained were the result of such a risk or peril, the plaintiff cannot recover, and your verdict must be for the defendant."

Responding to the request the Court said: "That is a true proposition of law; in other words, that the servant assumes all the risks that are necessarily incident to the employment—that is, he assumes the danger ordinarily incident to climbing a pole; but I take it that would be one of the dangers incident to climbing a sound pole. * * * So with a pole, the master is called upon to furnish; if he furnishes a pole upon which he desires his wires to be strung, and he furnishes a pole not strong enough to sup-

port, not only the weight of the servant while engaged in employment, but whatever was necessary to enable him to properly perform his duty, and it breaks under those circumstances, without negligence on the part of the servant, the master would be liable."

The contention is the first modification precluded the jury from considering whether or not the falling of decayed poles was one of the risks assumed by plaintiff under his employment in so far as said risks were known or could have been known by the exercise of ordinary care on his part. This objection cannot be sustained. The Court especially covered this point by instructing the jury in accordance with defendant's second, sixth and seventh requests.

It is further contended that the second modification was erroneous, as the complaint only alleged that the pole on which the plaintiff was required to work was decayed and incapable of supporting the weight of a man working thereon, and there was no testimony tending to show that it was necessary for plaintiff to remain upon the pole while the wires were being stretched. This objection is not well taken. We have already stated that there was testimony tending to show that it was usual and proper for plaintiff to be upon the pole while the wire was being stretched for the purpose of guiding and fastening the wire.

The remaining exception presents no material matter not considered and disposed of already.

The exceptions are overruled and the judgment of the Circuit Court is affirmed.